All right, our second case for this morning is United States v. Constantino Perales. And Mr. Anya, we will hear from you. Good morning, Your Honors. My name is Morris Anya. I represent Constantino Perales, the appellant. May it please the Court. Your Honors, we say to the Court that the District Court in this case abused its discretion in finding that the defendant's plea of guilty was knowingly and voluntarily given, and in denying the defendant's motion to withdraw his guilty plea for three reasons. The first being that the defendant was denied the effective assistance of counsel at the trial level. This is counsel who represented the defendant before he withdrew his guilty plea, and also during the withdrawal of his guilty plea. So you had quite the line of counsel. So we're speaking about which ones exactly, Kuzatsky and Graham? We are speaking of attorneys Mark Kuzatsky and attorney James Graham. Okay. Attorney Kuzatsky was appointed three and a half months before the start of the trial on December 4, 2017. So we say those two attorneys were ineffective, and our view was shared with his subsequent trial attorney, attorney Michael Schmiggy, who also filed a motion saying that they were ineffective. But didn't he got help, right? He was concerned that his lawyer didn't have enough time before trial, and he requested that a second lawyer be appointed, and the District Court obliged. That is correct, Your Honor. The District Court appointed attorney James Graham, but attorney Graham was appointed less than 30 days to the start of the trial on December 4. But it seems to me your argument is there's just no way they could have been prepared, right? I mean, they showed up, but there was an error waiting. I mean, they showed up ready to try the case. What's the... Well, attorney... Well, they said they were prepared. They said they were... I mean, lawyers sometimes work hard, right? They said they were prepared, but objectively speaking, when you look at the amount of discovery that was involved in the case, the documents alone, by our count, from this vantage point of view, were in excess of 14,000 pages. Attorney Kozacki was appointed in August, less than four months before the trial. Attorney Graham... I'm going to say it's seldom the case out of 14,000 documents that they're all equally relevant. They'd been reviewed, sifted. I'm willing to believe that maybe he hadn't read every last page, but surely the key parts... And he's represented to the court that he's ready to go. Maybe the lawyers divided issues up between them. Lawyers do all kinds of things when they're on a team. We appreciate that point, Your Honor, Madam Chief Judge. But the facts are that even beyond the documents, there were audio records involved in surveillance of Dr. Perales. There were video records. But why does that mean... Let's cut to the chase here. He decides on the morning of trial that he's going to plead guilty. And the district court judge goes through a very thorough conversation with him about that following Federal Rule of Criminal Procedure 11. She explores his health. She explores the medications that he's taking. He responds. There's not a hint in that colloquy that he is not in command of himself, able to make decisions. This is a tough decision for anybody to make, but no hint of panic attacks, no hint that... And she specifically asks him, under oath, has anybody pressured you into this? Are you satisfied with your counsel? He responds, no pressure, yes, satisfied with counsel. It's a big deal to take back those representations. And she thinks that he didn't... The judge decided that he had not met the criteria for taking it back. Why is she wrong? Well, she's wrong for a number of reasons. His co-allegation is that he was suffering from a panic attack during the pre-colloquy. But she thinks about that very carefully, and she says, first of all, the underlying evidence isn't particularly strong. And she doesn't, in the courtroom, see him in any way showing signs of panic. Your Honor, with respect, the underlying evidence showed that even before he came to plead guilty, he had been seeing a psychiatrist for, amongst other things, post-traumatic stress disorder, anxiety disorder, and also panic attacks. And he had been seeing a psychiatrist since he was confined at LaSalle County Jail in 2013. Was that the psychiatrist that thought there was some malingering? No. But that's the one in the report that he wanted to introduce. Yes. That was a separate psychiatrist. And, in fact, the evidence of malingering comes from subsequent defense counsel. He brought it before the court that he spoke with... I'm referring to Attorney Michael Schmigy. Schmigy, yeah. That he spoke with this Dr. Atul Shek. And in speaking with Shek, he deduced, that is, the attorney deduced, that Dr. Shek was Dr. Paralys Malingers. So that's a separate issue. This is Dr. Steven Gaskell, you're talking about, that opinion? No. Gaskell was court-appointed. Right. Meagher is the one you're talking about? Oh, Mr. Meagher. No, there's a third psychiatrist. And he didn't prepare a report for the court, but defense counsel Michael Schmigy referred to a conversation he had with that third psychiatrist. Right. His name is Atul Shek. But the point I was going to make is, there was a history of Dr. Paralys suffering from panic attacks, long before he came to plead guilty before the court. But I don't see anybody saying to the judge at the time of the motion to withdraw the guilty plea, here is what you should have been looking for in the courtroom to see if there was a panic attack. You're a layperson, how would you know if somebody's experiencing that? What she's saying, it's just like here we are in the courtroom, and for at least lay people, when somebody is having an intelligent conversation with you, your first assumption isn't going to be they're in the middle of a panic attack. Your Honor, before the court issued its ruling in this case, a number of issues had occurred. The court was alive to the fact that the attorney actually presenting the motion to withdraw the guilty plea had an antagonistic position to the defendant's position. Attorney Michael Shmiggy withdrew the report that buttressed Dr. Paralys' argument. Mr. Shmiggy, let me ask you about that counsel. You're talking about your argument that he was ineffective in his representation of your client during the motion to withdraw? Yes. So you phrased it in terms of a conflict, as you were just a moment ago. But the conflict, right, is between his ethical duty and then his duty to zealously represent his client and his duty not to present evidence that he thinks is false. Usually when we think about a conflict in the ineffectiveness context, it's something that's particular to that lawyer that would be changed if there was a different lawyer. But every lawyer would have that conflict. Every lawyer would have to make the decision. And perhaps the argument is that Shmiggy resolved it incorrectly, but then that strikes me as more of a Strickland argument, that his resolution of the legal question of what his ethical obligation was, and the district court was very clear about that she was not giving him legal advice. He had to make a legal determination about what the rules required in that circumstance. And so it seems really it's not a conflict argument, it's an argument that his resolution of that conflict, his conclusion that he had to withdraw the report, was deficient performance. I would agree with you, Your Honor, Judge Barrett. But regardless of if you view it as a conflict issue or not, what undergirds our argument is that his performance was deficient, it was ineffective, it's still related to Strickland. But that's tough to say. I mean, I've looked at Rule 3.3, which is the rule that Mr. Shmiggy was relying on, the duty of candor toward the tribunal, as Judge Barrett says, not optional for any lawyer. And indeed, the rule itself tells you, in the end, how you have to resolve the conflict between the duty of candor and the duty of loyalty and vigorous representation of your client by saying that if, in the end, compliance with the duty of candor requires disclosure of information otherwise protected by Rule 1.6, which is the client rule, you have to disclose to the court. So the rule tells you, in the final analysis, now would it have been better if Mr. Shmiggy had just come in and said, Your Honor, I'm moving to withdraw my representation, would it have been better if he just came in and said, you know, here's my revised motion, and the judge looked at it and said, oh, what happened to Mr. Meagher? You know, there could have been other things, you know, that he did that might have, I agree, it's a little unsettling to see the full nature of the conversation he had with the judge, but the judge was very careful to keep drawing the line, I'm not giving you advice, and if the judge thinks that the client is, I'm sorry, if the lawyer thinks the client is trying to introduce fraudulent evidence, the lawyer has an obligation to stop that. Well, the lawyer has an obligation not to present false evidence, but the lawyer doesn't have an obligation to take a position that's directly antagonistic to his client. Well, what's the difference? To say to the court, expate, outside his client's presence, refer to his client as a third person, and tell the court, you know, he wants to withdraw the guilty plea, but now I have a report that says that his guilty plea was knowingly and voluntarily given, and he wants me now to call another psychiatrist, which Attorney Schmid didn't want to get involved with, and then also relay a message from another psychiatrist, uninvolved, not before the court, that Dr. Perales mixed things up. But counsel, let me ask you this. If this is a conflict issue, then prejudice is presumed. If it's a strict and deficient performance, kind of a classic framework issue, you have to show prejudice, and the district judge was also very careful to say that even if she considered Meagher's report, she would still have concluded that the plea was voluntary and not permitted its withdrawal. Well, that segues right into our second issue, which is the court was obligated in the circumstances to hold an evidentiary hearing to resolve all these issues. What did she need to resolve at such a hearing? Hearings are not automatic, and she has a vague statement from Meagher. If Perales had experienced a panic attack, then he would not have been able to make a rational decision. But what Meagher quite notably does not say is, and I conclude based on something, you know, that Dr. Perales or Mr. Perales did experience such an attack. Meagher never says that in this statement. He does say in his March 9th letter that in his view, Dr. Perales had a dissociative reaction due to the level of panic he was experiencing. But there's no, there's, but his main point is, the letters say, if there's a panic attack, then no rational decision. He wasn't there. How would he know what was happening on the day of this colloquy about the withdrawal of the plea? He wasn't there, but before this colloquy, before this ex parte hearing, the district court was already minded, already intended to hold an evidentiary hearing. It's on the record. Well, if Meagher's, if Meagher's opinions had come in, yes, she thought she needed a she thought there was no need for a hearing. Yes, but the point is, on its own, Meagher's letters were sufficient to trigger a hearing based on the district court's own words. And then defense counsel presents the report of Dr. Gaskell, which directly contradicts Leo Meagher's reports. And then the district court in the colloquy says to defense counsel, well, you know, if you decide to withdraw the letters by Dr. Meagher or Leo Meagher and replace it with those of Dr. Gaskell, the more prejudicial report, then I won't have to have a hearing. And lo and behold, defense counsel does that. Right, but here's the concern. I mean, I think another thing we're sort of sliding over, there was some concern about the way Mr. Meagher was even being presented to the court. Was he a licensed psychologist? Was he a psychiatrist? Was he a clinical worker? It turns out he's a clinical worker, and that's a lesser degree of professional qualification at a minimum. There's just some sense of lack of candor with respect to it. And as Judge Barrett points out, the judge also finally saying he just doesn't even say quite enough to help in this decision. In terms of Leo Meagher's qualifications, that would have gone to the weight of his assessment of the defendant. Well, as long as you're being honest with the tribunal about it. But if you're trying to blow him up to more than he is to the tribunal, that's different. Well, that goes back to counsel's conduct. It was counsel who, on his own, indicated to the court that he was misled by his client. And we don't know the context in which that information was passed from attorney to client. But the counsel went above and beyond the call to tell the court that he was misled by the client, something which was prejudicial to the client, saying that he relied on Dr. Paralysis Ward, and Dr. Paralysis is a medical doctor, and so he thought that Leo Meagher was a psychologist. Well, all he had to do was file a supplemental motion saying, these are the qualifications of Leo Meagher. The issue was ripe for hearing before the court, given the conflicting information from Leo Meagher on the one hand, and Stephen Gaskell on the other hand. And so the issues are all interrelated. The first issue about whether or not his plea was known and intelligently, known and voluntarily given is related to the issue of ineffective assistance of the first set of trial counsel, announcing ready for trial after being appointed less than three months before the trial date in the case of James Graham, less than a month before the trial date. The fact that there was a dispute as to whether or not he was suffering a panic attack, we have on the one hand the letters, three letters by Leo Meagher. I think we have your point. Your time is now up. Thank you. Thank you. Ms. Melizia. May it please the court. The district court did not abuse its discretion in rejecting the defendant's motion to withdraw his guilty plea. In a lengthy and well-reasoned opinion, the district court correctly concluded that the defendant's plea was knowing and voluntary based on the defendant's own under oath statements during his change of plea colloquy and the district court's personal observations of the defendant's demeanor. So do you exclude the possibility that somebody can be experiencing some form of psychological distress that would not necessarily be visible to a lay person's eyes? Your Honor, certainly that's possible, but under the totality of the circumstances in this case, on the record before the court, which included numerous pre-trial status hearings during which the court was able to observe the defendant's demeanor, his calm rationale throughout these proceedings as the district court observed in its written opinion, and his ability to articulate his concerns to the court on repeated occasions, the court was entitled to infer here that that was not the case. The district court also had before it the opinion of an independent forensic expert who examined the defendant and concluded that he was not in fact suffering a panic attack during his change of plea. Well, this is Dr. Gaskell, who basically thinks that Mr. Perales is not as bad off as he says he is, I guess. Yes, Judge. I'll say that. I mean, everybody's extrapolating, so why shouldn't Mr. Meager's extrapolations about Mr. Perales's condition during the guilty plea also have been given some weight? Well, that was not before the court when the court was considering the motion to withdraw, but the court did nonetheless consider those statements and observed that Mr. Meager's statements were unpersuasive, inconclusive about the defendant's mental state, and unqualified in that Mr. Meager was not, as he was originally represented, a licensed psychologist but was merely a clinical professional. So the court was entitled to draw its conclusions that these statements should not be relied on in support of the defendant's motion to withdraw his guilty plea for a variety of reasons. So when does Mr. Meager's actual professional background come to the court's attention in this sequence? Is it after the guilty plea but before the motion to withdraw, or after the motion to withdraw? So after the motion to withdraw his guilty plea, the defendant submitted two letters from Mr. Meager, both of which post-date the entry of the guilty plea. On the letterhead for those letters, Mr. Meager is accurately identified as a licensed clinical professional. So it's a little unclear where post-plea counsel arrived at the conclusion that he was a licensed clinical psychologist. He says it came from his client, but it's pretty clear from Mr. Meager's letters that he did not have those qualifications. But I think the first date when the court would have been aware he was not a psychologist would have been from those letters in which Mr. Meager himself represents himself as merely a licensed clinical professional. The district court also properly concluded that the defendant, just to address another point that counsel raised, was effectively represented prior to the entry of his guilty plea. I have to say I was somewhat surprised in looking at this colloquy, the off-the-record colloquy between the district court judge and Mr. Schmiege, I guess. Candor is hardly the word for it. I mean, he's giving some very intimate disclosures of attorney-client communications, and that made me uncomfortable. I mean, it's very easy to say, I need to withdraw, and given the line of lawyers that Mr. Perales had been through, it wouldn't have come as a big shock to the district court that yet another lawyer was finding this an impossible representation. And simply saying, I have to withdraw, doesn't disclose the content of those kinds of communications. Certainly, Your Honor, other counsel may have chosen to proceed differently. And I'm saying, did he, I mean, we need to be comfortable that he didn't cross the line. That's why I went back and looked at these, the Illinois Rules of Professional Conduct, the Model Rules of Professional Conduct, to see where that line is. And the rules do not leave one with the impression that option one is to go bare your soul to the court. The rules emphasize accommodating these two very important duties. Well, and Your Honor, as I think the court has accurately pointed out, the duty of candor to the tribunal certainly is not in conflict with the duty to represent one's client, at least in these circumstances. Now, did Mr. Schmigy maybe go above and beyond in his duty of candor to the court? Yes. Did he cross the line into prejudicing the defendant? No. Well, see, here's, for example, in the Illinois Rule, what I'm pointing to. So in Part A3 of the Illinois Rule, a lawyer shall not knowingly offer evidence that the lawyer knows to be false, okay, fine, and then it goes on to say what should happen if the lawyer comes to know that it's false. And it says the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence other than the testimony of the defendant that the lawyer thinks. So the way that's worded, as I say, doesn't come across to me that going to tell the court about it is your first step. Your first step needs to be some other kind of reasonable remedial measure that will protect confidentiality, but if in the final analysis you have to tell the court, the rule allows you to do so. I don't see that kind of balancing. Well, Your Honor, we don't know what was going through counsel's head. We do know that he arrived at the decision that the best approach was to bring this to the court's attention, ex parte, and outside the presence of the defendant, but what he to withdraw certain information from the court's consideration that he believed was inaccurate and misleading to the tribunal. And the district court, to its credit, told counsel repeatedly in this ex parte hearing, I cannot give you legal advice, I cannot tell you what to do, it is entirely at your discretion how you choose to proceed. Suppose instead he had said, suppose instead of this meeting he had just filed a motion to amend the motion to withdraw the guilty plea and didn't include Mr. Meagher's testimony in support of that motion and said please limit your consideration to the supporting materials here. Not with a discussion of because I think my client's lying or because I think Mr. Meagher is overblown, without the explanation. Why did the judge need the explanation? Your Honor, again, I can't tell you what was going through counsel's head. Perhaps the court did not need the explanation. No, the court didn't need the explanation. But that explanation was offered here and at the end of the day did not ultimately prejudice the defendant. Counsel, let me ask you the question I asked Mr. Anya along these lines. Let's assume that he did too much. Let's assume that he disclosed too many communications with the client that would cast the client in a negative light before the judge. How should we think about that? Should we think about that in the two-pronged Strickland, you know, that was perhaps deficient performance, perhaps that, you know, fell below professional standards in disclosing that information but didn't prejudice or should we think about it in the Coulier prejudice because there's a conflict? Your Honor, we would proceed under Strickland under the hypothetical you're describing here which I think is very closely analogous to what happened before the district court. Counsel is, the defendant has not identified a conflict of interest here that would fit within the Coulier framework. Under Strickland, if we're assuming that counsel's performance was objectively unreasonable, the defendant still has failed to show prejudice here. The district court ultimately considered numerous factors independent of counsel's performance in rejecting the defendant's motion to withdraw his guilty plea, all of which are laid out in detail in the court's written opinion. It also went on to consider the statements counsel had withdrawn from the court's consideration, those of Leo Neger, and found them to be unreliable and inconclusive about the defendant's mental state. So even if we're operating under the Strickland framework and assuming that counsel's performance fell below an objective standard of reasonableness, there's still no prejudice here. I mean, that could have bigger consequences for Mr. Perales because, of course, if he's really trying to raise an ineffective assistance of counsel claim at this stage, that's it for this appeal. It would not be available in some later proceeding. I think that's correct, Your Honor. Are there any other issues the tribunal wished me to address? I see no signs that there are. Your Honor, so if there are no further questions, the government asks that this court affirm the defendant's conviction. All right. Thank you very much. Mr. Agnew, your time had expired, so we will take this case under advisement.